575 S.E.2d 142

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Paul Ray VARNER, Jr., Defendant Below, Appellant.**

**No. 30518.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 9, 2002.

Decided Nov. 8, 2002.

Patrick N. Radcliff, Vienna, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Heather D. Foster, Assistant Attorney General, Charleston, for the Appellee.

PER CURIAM.

Paul Ray Varner, Jr. (hereinafter "Mr. Varner") appeals his convictions for first degree murder without a recommendation of mercy and burglary in the Circuit Court of Wood County, West Virginia. Mr. Varner raises a number of issues. However, after reviewing the briefs, examining pertinent authorities and hearing the arguments of coun-

sel, we find his claim that he was denied trial by a fair and impartial jury to be most persuasive. Accordingly, we reverse Mr. Varner's conviction and remand this case for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Varner was accused of his ex-wife's fatal stabbing, and was convicted thereof on October 30, 2000. Following this conviction, Mr. Varner's trial counsel (hereinafter "trial counsel")[1] requested a new trial and was granted ten days to file a written motion assigning grounds supporting the motion. The trial court continued sentencing until December 20, 2000.

On December 19, trial counsel filed several motions, one of which was that he had learned that one of the jurors who had convicted Mr. Varner had failed to disclose pertinent information which reflected on the juror's ability to be impartial. As such, trial counsel requested the *voir dire* be transcribed to examine the juror's *voir dire* answers.

Thereafter, on December 20, the trial court heard arguments on the motions. Trial counsel identified the juror in·question as the foreperson. Additionally, trial counsel advised the circuit court that he initially learned of the potentially disqualifying information from an alternate juror. Trial counsel also informed the court that he had contacted the Prosecuting Attorney to discuss the matter. During this proceeding, the Prosecuting Attorney advised the court that she had been contacted by the police detective who had investigated the foreperson, a nurse at Camden Clark Hospital, for an offense relating to prescription medications. The detective inquired if an agreement could be reached "without formally indicting and everything ....," given that the foreperson was a nurse and had been reported to the appropriate professional licensing authority. The Prosecuting Attorney never spoke directly to the foreperson, but did speak to the investigating detective, the foreperson's law-

1. Mr. Varner is represented on appeal by different counsel.

yer and the personnel director for the foreperson's employer, Camden Clark Hospital, all of whom sought to assist the foreperson. Although charges were filed, an unwritten agreement provided additionally that the foreperson would submit to random drug testing[2] and that violation of such testing could result in prosecution. The charges against the foreperson ultimately were dismissed in April, 2000, approximately six months before Mr. Varner's trial.[3]

At the December 20 hearing, the Prosecuting Attorney argued further that Mr. Varner's December 19 motion for a new trial and for transcription of *voir dire* were untimely because trial counsel had known the identity of the foreperson since at least November, 2000. Trial counsel first learned of the agreement from an alternate juror and sought confirmation from the Prosecuting Attorney before filing the motions. In response, trial counsel admitted that he probably did speak with the Prosecuting Attorney in November, that he had no excuse for waiting until December 19 to file the motions and that he should have filed them sooner.

The trial court denied the motion for a new trial finding it to be untimely and, alternatively, finding that Mr. Varner did not carry his burden of demonstrating the foreperson was not fair and impartial. From these rulings, Mr. Varner now appeals.

## II.

## STANDARD OF REVIEW

■ We recently synthesized our standard for reviewing rulings denying new trials in *State v. Swims*, 212 W.Va. 263, 569 S.E.2d 784, 788 (2002):

"As a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994) .... Thus, in reviewing

challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review."

(Quoting *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995)).

■ This Court has also explained that

" '[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997).

Syl. pt. 1, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000).

## III.

## DISCUSSION

■ Among the issues raised by Mr. Varner in this appeal is his contention that he was denied a fair trial by an impartial jury. Specifically, we must decide if Mr. Varner timely brought to the circuit court's attention information tending to demonstrate bias or prejudice on the part of the petit jury's foreperson and, if so, whether this bias or prejudice resulted in trial by a juror who was not reasonably fair and impartial.[4]

The State asserts that, while a hearing would normally be required, trial counsel's dilatoriness in raising the issue waived any

---

**2.** The Prosecuting Attorney admitted that this type of agreement is not usually undertaken. The trial court likewise observed that the agreement "seems very unusual".

**3.** Having never met the foreperson, the Prosecuting Attorney did not realize the foreperson was someone with whom she had an agreement until her post-trial conversations with Mr. Varner's

trial counsel. During oral argument before this Court, the State confirmed that the aforementioned agreement was still in effect at the time of Mr. Varner's trial.

**4.** We specifically find that there was sufficient evidence to sustain the convictions under the sufficiency of the evidence test contained in Syllabus Point 1 of *State v. Guthrie*, 194 W.Va. 657,

claim relating to the foreperson. Mr. Varner replies that the need for a contemporaneous objection is limited to those circumstances where an objection would afford an opportunity to correct the alleged error. Under the facts of this case, we agree with Mr. Varner.

■ In Syllabus point 5 of *McGlone v. Superior Trucking, Inc.*, 178 W.Va. 659, 363 S.E.2d 736 (1987), we held:

Where a new trial is requested on account of alleged disqualification or misconduct of a juror, it must appear that the party requesting the new trial called the attention of the court to the disqualification or misconduct as soon as it was first discovered or as soon thereafter as the course of the proceedings would permit; and if the party fails to do so, he or she will be held to have waived all objections to such juror disqualification or misconduct, *unless it is a matter which could not have been remedied by calling attention to it at the time it was first discovered. Flesher v. Hale*, 22 W.Va. 44 (1883).[5]

(Emphasis and footnote added).

■ Mr. Varner correctly directs our attention to the italicized portion of *McGlone.* We have recognized that the basis of our timely objection rule is to afford the opportunity to correct any alleged error. "[A] timely objection or motion to strike 'gives both the court and the party's opponent fair warning and a timely opportunity to acknowledge and correct the errors so that cases can be decided squarely on the merits.'" *Yates v. University of West Virginia Bd. of Trustees*, 209 W.Va. 487, 493, 549 S.E.2d 681, 687 (W.Va. 2001) (quoting 1 Franklin D. Cleckley, *Hand-book On Evidence For West Virginia Lawyers* § 1–7(B)(7)(a), at 1–62 (4th ed.2000)). By the time trial counsel ultimately learned of the foreperson's questionable partiality, in November, the trial had been concluded for several weeks. Thus, there was nothing more the trial court could have done in November—when counsel first learned of the foreperson's alleged partiality—than it could have done in December when trial counsel first brought the issue to the trial court's attention. Our rules of practice are not simply normative, but are crafted to achieve desirable ends. When applying them would not effectuate their underlying goals, we eschew their application.[6] Under the facts of this case, barring the motion on timeliness grounds failed to effectuate the principle underlying the timely objection rule. Thus, we believe the circuit court abused its discretion in that it acted "under a misapprehension of the law." *Swims*, 212 W.Va. at 267, 569 S.E.2d at 788 (internal quotations and citations omitted). *See also State ex rel. Hoover v. Berger*, 199 W.Va. 12, 17, 483 S.E.2d 12, 17 (1996) ("[A] circuit court by definition abuses its discretion when it makes an error of law."). Thus, we conclude that the circuit court erred by finding the motion was untimely.[7]

■ In the alternative, the State asks us to remand this case for a hearing if we conclude the motion for a new trial was timely. The State contends, and we agree, that jurors are entitled to a presumption of impartiality. *See, e.g., State v. Wade*, 200 W.Va. 637, 656, 490 S.E.2d 724, 743 (1997). ("[W]hen a defendant seeks the disqualification of a juror, the defendant bears the bur-

---

461 S.E.2d 163 (1995), and that, consequently, there is no bar to retrying Mr. Varner. *Cf.* Syl. pt. 4, *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979) ("The Double Jeopardy Clause of the Federal and this State's Constitutions forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."). Mr. Varner's other assignments of error are meritless, were not preserved at trial or are not properly briefed in this Court. Thus, we decline to address them.

5. We overruled *Flesher* on other grounds in Syllabus point 3 of *Proudfoot v. Dan's Marine Service, Inc.*, 210 W.Va. 498, 558 S.E.2d 298 (2001).

6. Given that, at most, only a few weeks elapsed between the first notice that there may have been a problem with the juror and the December 19 filing of the motions, we do not perceive the delay to be prejudicial—especially given that the Prosecuting Attorney was on notice before the filing of the December 19 motions that trial counsel was investigating the foreperson.

7. We pause to note that "[t]he line demarcating what constitutes a timely objection in order to become preserved for appeal is not a bright one." Craig Lee Montz, *Trial Objections from Beginning to End: The Handbook for Civil and Criminal Trials*, 29 Pepperdine L.Rev. 243, 251 (2002). Thus, we reiterate the obvious when we strongly advise that the best and safest course is to proceed with alacrity in filing motions.

den of 'rebut[ting] the presumption of a prospective juror's impartiality[.]' " (internal quotations and citations omitted)) Moreover, the State asserts, and we agree, that there is no common law disqualification based on a pending criminal case against a juror. *See generally Turnipseed v. Georgia,* 54 Ga.App. 442, 188 S.E. 260 (1936) (noting that, under common law, disqualification as a juror occurred only when judgment of conviction was entered and observing further that simple conviction alone was insufficient to constitute disqualification). The State argues, therefore, that for us to by-pass remand and directly reverse this case for a new trial requires our creation of a new common law ground for disqualification. We disagree. Our review of this case convinces us that it fits well within the existing framework of our juror disqualification jurisprudence, both judicially and statutorily crafted. We can "make independent factual determinations without resorting to remand where the record contains sufficient dispositive facts for decision." Syl. pt. 1, in part, *Tomkies v. Tomkies,* 158 W.Va. 872, 215 S.E.2d 652 (1975). *See also* Syl. pt. 3, in part, *State v. Salmons,* 203 W.Va. 561, 509 S.E.2d 842 (1998) (When "the record is adequately developed on the issue, this Court may, in its discretion, review the merits of the assignment of error."). Thus, we can reverse and remand for a new trial based upon existing law.

 We have independently engaged in a thorough and searching review of the record—including the December 20 hearing wherein the Prosecuting Attorney explained the agreement she had with the foreperson, and the *voir dire.* Our review of the record gives us grave concern. We believe that Mr. Varner has rebutted the presumption of impartiality and that, given the contents of the record, it would be impossible to rehabilitate the foreperson. Thus, to remand this case for a hearing to confirm the obvious would be a futile act and " '[t]he law does not require the doing of a futile act.' " *State v. James*

*Edward S.,* 184 W.Va. 408, 413, 400 S.E.2d 843, 848 (1990) (quoting *Ohio v. Roberts,* 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597, 613 (1980), *opinion clarified on other grounds by United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)), *modified on other grounds by State v. Kennedy,* 205 W.Va. 224, 517 S.E.2d 457 (1999).[8]

 " 'The right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14 of the West Virginia Constitution.' Syllabus point 4, [in part,] *State v. Peacher,* 167 W.Va. 540, 280 S.E.2d 559 (1981)." Syllabus point 4, in part, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994). " " 'A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness.' " " *State ex rel. Brown v. Dietrick,* 191 W.Va. 169, 173, 444 S.E.2d 47, 51 (1994) (quoting *Louk v. Haynes,* 159 W.Va. 482, 499, 223 S.E.2d 780, 791 (1976) (quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955))).

> The object of jury selection is to secure jurors who are not only free from improper prejudice and bias, but who are also free from the suspicion of improper prejudice or bias. As far as is practicable in the selection of jurors, trial courts should strive to secure jurors who are not only free from prejudice or bias, but also are not even subject to any well-grounded suspicion of any prejudice or bias.

*State v. Schermerhorn,* 211 W.Va. 376, 380, 566 S.E.2d 263, 267 (2002) (per curiam) (citations omitted). Our Legislature has statutorily barred from service potential jurors who might be biased or prejudiced in a particular cause. W. Va.Code § 56–6–12 (1923) (Repl. Vol.1997).

 We have said of judges, and we think it applicable to jurors, that

---

8. During *voir dire,* an Assistant Prosecuting Attorney inquired, "Has anyone here ever been involved with the criminal justice system in any other way? For instance, has anyone here ever been charged with a crime?" The foreperson did not respond. The State claims a remand for

a hearing is necessary because the foreperson might not have heard the question. We do not think that a remand is necessitated in light of all the other information contained in the record before us.

"[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law. *Tumey v. Ohio*, 273 U.S. 510, 524, 47 S.Ct. 437, 71 L.Ed. 749 [ (1927) ]." Point 2, syllabus, *Williams v. Brannen*, 116 W.Va. 1[, 178 S.E. 67 (1935) ]." Syl. pt. 3, *Keith v. Gerber*, 156 W.Va. 787, 197 S.E.2d 310 (1973). "We have also held that '[a]ny doubt the court might have regarding the impartiality of a juror must be resolved in favor of the party seeking to strike the potential juror.' *Davis v. Wang*, 184 W.Va. 222, 226, 400 S.E.2d 230, 234 (1990)[, *overruled on other grounds by Pleasants v. Alliance Corp.*, 209 W.Va. 39, 543 S.E.2d 320 (2000) ]." *State v. Johnston*, 211 W.Va. 293, 295, 565 S.E.2d 415, 417 (2002) (per curiam).

Here, even though the charges had been dismissed against the foreperson, the Prosecuting Attorney still had what the State terms "an executory agreement" with her for some drug related offense when the jury convicted Mr. Varner. As long as the foreperson was under the obligations of the informal "executory agreement," there was a "well-grounded suspicion" that she could attempt to curry favor with the State to her benefit, and Mr. Varner's detriment, by voting to convict. Moreover, the foreperson received a seemingly "very unusual" agreement which was not the Prosecuting Attorney's normal practice. The agreement apparently did not subject the foreperson—a nurse—to indictment for criminal charges relating to prescription medications. As was earlier referenced, a police detective, as well as the personnel director of the foreperson's employer, intervened on the foreperson's behalf with the Prosecuting Attorney in order to assist the foreperson in avoiding prosecution. These circumstances give rise to a "well-grounded suspicion" that the foreperson would favor the State because of the favorable treatment received from the Prose-

cuting Attorney's office.[9] In short, "[i]n the instant case, this Court has serious doubts about the juror's ability to be fair and impartial." *Johnston*, 211 W.Va. at 295, 565 S.E.2d at 417. Thus, consistent with our prior jurisprudence, we find it ineluctably necessary to reverse the conviction and remand for a new trial.

## IV.

## CONCLUSION

For the forgoing reasons, the judgment of the Circuit Court of Wood County is reversed, and this case is remanded for a new trial.

Reversed and Remanded.

Justice ALBRIGHT, deeming himself disqualified, did not participate in the decision of this case.

Judge JANES, sitting by temporary assignment.

---

9. Our opinion should not be taken as expressing any view on the Prosecuting Attorney's original decision to enter into the pre-trial diversion agreement. For an overview of pre-trial diversion programs, see ABA, *Standards for Criminal Justice*, stnds. 3–3.8 & 4–6.1 (3d ed.1993), and the National District Attorneys' Association, *National Prosecution Standards*, stnd. 44 (2d ed.1991).