605 S.E.2d 803

**John David PULLIN, Defendant Below, Appellant,**

v.

**STATE of West Virginia, Plaintiff Below, Appellee.**

**No. 31659.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2004.

Decided Oct. 22, 2004.

David Karickhoff, Esq., Sutton, for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Colleen A. Ford, Esq., Assistant Attorney General, Charleston, for Appellee.

PER CURIAM.

This is an appeal by John David Pullin, appellant/defendant below (hereinafter Mr. Pullin), from an order of the Circuit Court of Braxton County sentencing him to two consecutive terms of imprisonment of not less than one nor more than five years. The sentences resulted from Mr. Pullin's conviction under an indictment charging him with two counts of delivery of a controlled substance. In this appeal, Mr. Pullin has alleged seven assignments of error: (1) invalid verdict form, (2) denial of jury instruction, (3) admission of prejudicial testimony, (4) admission of certain documents, (5) improper examination by the court, (6) improper sentence, and (7) insufficiency of evidence to support convictions. After careful review of the briefs and record in this case, we reverse the convictions and sentences and remand this case for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On December 18, 2001, the state police had information that Mr. Pullin was selling illegal drugs. To confirm this, the state police used two informants. The informants contacted Mr. Pullin by phone and inquired about purchasing marijuana. Mr. Pullin instructed the informants to come to his house because another person was bringing the marijuana to him. The state police placed recording devices on the informants and gave each of them $60.00 to purchase the marijuana. The two informants drove to Mr. Pullin's home alone, but a state police officer, Trooper M. Yost, was nearby in a separate vehicle.

Shortly after the informants entered Mr. Pullin's trailer home, another person, David Facemire, arrived.[1] Mr. Pullin met separately with Mr. Facemire. Apparently during this private meeting, Mr. Facemire gave Mr. Pullin the marijuana that was to be sold to the informants. After the exchange be-

tween Mr. Pullin and Mr. Facemire, Mr. Pullin took the two informants to another room and sold each of them a bag of marijuana.

After the drug transaction, Mr. Pullin was indicted on October 2, 2002. The indictment charged Mr. Pullin with two counts of felony delivery of a controlled substance. A jury trial was held on February 25–26, 2003. Mr. Pullin was found guilty of both counts. Mr. Pullin filed motions for judgment of acquittal and new trial, both of which were denied. The circuit court subsequently sentenced Mr. Pullin to two consecutive terms of imprisonment of one to five years. This appeal followed.

## II.

### STANDARD OF REVIEW

In this proceeding, we are called upon to determine whether the circuit court properly denied Mr. Pullin's post-trial motions. We have made clear that " '[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." ' *State v. Flippo*, 212 W.Va. 560, 567, 575 S.E.2d 170, 177 (2002) (quoting Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)). In Syllabus point 3 of *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000), we elaborated upon the standard of review as follows:

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

With respect to Mr. Pullin's motion for judgment of acquittal based upon insuffi-

---

1. Mr. Facemire is not related to the trial judge, who has the same last name.

ciency of evidence, the standard of review was stated in Syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), as follows:

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

We will now apply the foregoing standards to the case at hand.

## III.

## DISCUSSION

### A.  Verdict Form

The first issue raised by Mr. Pullin involves language in the verdict form used in the case. That language, which appeared twice for each count in the indictment, is as follows: "We, the Jury, find, beyond a reasonable doubt, the Defendant, JOHN DAVID PULLIN, not guilty of Delivery of a Controlled Substance, as charged in Count One."

■ Mr. Pullin contends, and we agree, that this language impermissibly shifted the burden of proof to him and violated the presumption of innocence. The state contends, however, that any error in the language of the verdict form was waived, because the trial judge asked both parties if there were any objections to the verdict form, and the defendant stated that he had no objections. Mr. Pullin does not dispute the fact that defense counsel approved of the verdict form. In spite of this invited error, Mr. Pullin has asked this Court to invoke the plain error doctrine to resurrect the issue.

■ As a general rule, " '[a] judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal.' Syl. pt. 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966)." Syl. pt. 4,

*State v. Johnson*, 197 W.Va. 575, 476 S.E.2d 522 (1996). In *State v. Crabtree*, 198 W.Va. 620, 627, 482 S.E.2d 605, 612 (1996), we made the following observations:

> "Invited error" is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is not to [legitimize the error] but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.

This Court has also noted, in *State v. Knuckles*, 196 W.Va. 416, 421, 473 S.E.2d 131, 136 (1996) (per curiam), that "waiver necessarily precludes salvage by plain error review."

■ In rare instances however, this Court has used the plain error doctrine to review an error that was invited. *See State v. Redden*, 199 W.Va. 660, 487 S.E.2d 318 (1997) (using plain error to address an invited error issue that involved a fundamental right secured by the state and federal constitutions); *State v. Miller*, 184 W.Va. 367, 400 S.E.2d 611 (1990) (same). We believe the invited error in this case is an instance where the plain error doctrine must be invoked. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). The error in this case satisfies the requirements of the plain error doctrine.

■ Our cases have recognized that "[c]ertain constitutional rights are so inherently personal and so tied to fundamental concepts of justice that their surrender by anyone other than the accused acting voluntarily, knowingly, and intelligently would call into question the fairness of a criminal trial." Syl. pt. 5, *State v. Neuman*, 179 W.Va. 580,

371 S.E.2d 77 (1988). The constitutional right that was waived by defense counsel, not by Mr. Pullin directly, involved the presumption of innocence.

"[U]nder our law the presumption of innocence is an integral part of criminal due process and ... such presumption is itself a constitutional guarantee embodied in Article III, Section 10 of the West Virginia Constitution." *State v. Boyd,* 160 W.Va. 234, 241, 233 S.E.2d 710, 716 (1977). *See Pinkerton v. Farr,* 159 W.Va. 223, 229, 220 S.E.2d 682, 687 (1975) ("The right to a presumption of innocence is so firmly embedded in our law, ... that a violation of that right would result in such unfairness as to constitute a deprivation of one's right to due process of law."). We have also held that "[i]n the trial of a criminal offense, the presumption of innocence existing in favor of a defendant continues through every stage of the trial until a finding of guilty by the jury." Syl. pt. 11, *State v. Pietranton,* 140 W.Va. 444, 84 S.E.2d 774 (1954). Therefore, "the burden of alleging and proving each element of a criminal offense beyond a reasonable doubt rests with the state and may not be shifted to the defendant." *State v. Hulbert,* 209 W.Va. 217, 226, 544 S.E.2d 919, 929 (2001) (citing *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Bowman v. Leverette,* 169 W.Va. 589, 289 S.E.2d 435 (1982)). Thus, " '[i]t is unconstitutional to shift the burden of proof to a defendant on any element of a crime[ ].' " *State v. Jenkins,* 191 W.Va. 87, 93, 443 S.E.2d 244, 250 (1994) (quoting *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).

In this proceeding, the verdict form unquestionably required the jury to find that Mr. Pullin was not guilty only if he presented evidence to establish beyond a reasonable doubt that he was innocent. This requirement by the verdict form violated Mr. Pullin's constitutional right to a presumption of innocence because it shifted the burden to him to prove his innocence.

The state contends that, because the trial judge instructed the jury that the prosecution had the burden of proving Mr. Pullin guilty beyond a reasonable doubt and that Mr. Pullin was presumed innocent, any error in the verdict form was harmless. *See* Syl. pt. 5, *State ex rel. Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975) ("Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt."). We are not persuaded that this error was harmless beyond a reasonable doubt because the verdict form had the effect of nullifying the jury instructions given by the trial judge. We have previously indicated that "an ... error which unconstitutionally shifts the burden of proof ... to the defendant, causing a serious question about the accuracy of the guilty verdict, is not an error that did not contribute to the guilty verdict." *Angel v. Mohn,* 162 W.Va. 795, 798, 253 S.E.2d 63, 66 (1979). *See also State v. DeWeese,* 213 W.Va. 339, 353, 582 S.E.2d 786, 800 (2003) ("[W]e simply cannot conclude that the incriminating statements provided to the jury by the polygraph examiner were harmless beyond a reasonable doubt."); *State v. Ladd,* 210 W.Va. 413, 431, 557 S.E.2d 820, 838 (2001) ("[W]e are unable to conclude beyond a reasonable doubt that the improper admission of ... out-of-court statement was harmless to the jury's determinations on the first and second counts of the indictment."); *State v. Hicks,* 198 W.Va. 656, 662, 482 S.E.2d 641, 647 (1996) ("The record ... falls short of demonstrating beyond a reasonable doubt that what transpired in the defendant's absence was harmless[.]"); *State v. Jenkins,* 191 W.Va. 87, 99, 443 S.E.2d 244, 256 (1994) ("It cannot be said beyond a reasonable doubt that the unconstitutional instruction could not have contributed to the verdict of first degree murder without a recommendation of mercy."). Consequently, the convictions and sentences in this case must be reversed, and Mr. Pullin is entitled to a new trial.

### B. Denial of Jury Instruction

Mr. Pullin also contends that the trial judge committed error in failing to give a missing witness instruction to the jury. Although we have reversed this case on the first assignment of error, we must nevertheless address Mr. Pullin's "missing witness" assignment of error because the issue could

arise again during a retrial of this case. Specifically, Mr. Pullin sought to have the trial court instruct the jury as follows: "The Court instructs the jury that the failure of the State to call David Facemire gives rise to the inference that had David Facemire testi[fied], his testimony would have been adverse to the State's case." The trial court refused to give the instruction on the ground that Mr. Pullin could have called Mr. Facemire as a witness.

In Syllabus point 11 of *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994), this Court stated the following regarding a trial court's refusal to give a jury instruction:

> A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

Assuming for a moment that Mr. Pullin was entitled to a missing witness instruction, the instruction submitted by Mr. Pullin was not a correct statement of the law. In the context of a civil case, we have stated the following regarding a missing witness instruction:

> The unjustified failure of a party in a civil case to call an available material witness may, if the trier of the facts so finds, give rise to an inference that the testimony of the "missing" witness would, if he or she had been called, have been adverse to the party failing to call such witness.

Syl. pt. 3, in part, *McGlone v. Superior Trucking Co., Inc.,* 178 W.Va. 659, 363 S.E.2d 736 (1987). Under *McGlone,* a jury is to be instructed that it "may" infer that a witness would testify adverse to a party. The instruction tendered by Mr. Pullin did not inform the jury that it "may" infer that Mr. Facemire would have testified adverse to the prosecution. The instruction proffered by Mr. Pullin was couched in language that gave the jury no choice but to infer Mr. Facemire would have testified adverse to the prosecution. *See McGlone,* 178 W.Va. at 667, 363 S.E.2d at 744 ("[A]n instruction directing the jury's attention to the failure of a party to call a particular witness or to produce other particular evidence at trial must be carefully drafted so as not to be binding upon the jury."). Consequently, the instruction should not have been given as proffered.

Further, we will note that a criminal defendant does not possess an absolute right to have a missing witness instruction given to the jury. It has been pointed out that a "missing witness instruction 'is not warranted if the defense does not adequately show that the government possesses the sole power to produce the witness.'" *United States v. Martinez–Figueroa,* 363 F.3d 679, 682 (8th Cir.2004) (quoting *United States v. Johnson,* 562 F.2d 515, 517 (8th Cir.1977)). *See also United States v. DeLuca,* 137 F.3d 24, 38 (1st Cir.1998) (finding that defendants failed to show missing witnesses were "'peculiarly available' to the government, such as being within the government's 'exclusive control'"); *United States v. Tarantino,* 846 F.2d 1384, 1404 (D.C.Cir.1988) ("[A]n instruction or inference that the missing witness' testimony would be unfavorable to the government is generally permissible only when it is within the government's exclusive power to call the witness to testify."); *United States v. Montoya,* 676 F.2d 428, 431 (10th Cir.1982) (explaining that a missing witness "instruction is not warranted unless it is solely within the prosecution's power to call the witness to testify"); *State v. Anderson,* 867 S.W.2d 571, 576 (Mo.App.1993) ("If a witness is equally available to both parties or unavailable to either party, the trial court should not permit counsel to argue to the jury ... that an adverse inference arises from the state's failure to call the witness."); *State v. McGarrett,* 535 N.W.2d 765, 770 (S.D.1995) ("[T]he defense failed to show any evidence that State possessed the sole power to produce [the witness] to testify or that he was under its control.... Hence, the trial court did not err in refusing McGarrett's [missing witness] instruction."). In this proceeding, counsel for Mr. Pullin admitted during the trial that he could have called Mr. Facemire as a witness. Under these circumstances, the trial court

was correct in refusing to give a missing witness instruction.[2]

## IV.

### CONCLUSION

The verdict form submitted to the jury in this case impermissibly shifted the burden of proof to Mr. Pullin. Therefore, in light of the foregoing analysis, Mr. Pullin's convictions and sentences are reversed, and the case is remanded for a new trial.

Reversed and Remanded.

---

2. The other assignments of error asserted by Mr. Pullin have no merit, and we therefore summarily reject them. We will note, however, as to the issue of sufficiency of evidence, we find that there was sufficient evidence to sustain the convictions under the test contained in Syllabus point 1 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Consequently, there is no bar to retrying Mr. Pullin. *See* Syl. pt. 4, *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979) ("The Double Jeopardy Clause of the Federal and this State's Constitutions forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.").