IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

No. 16-0775

**FILED**

**April 5, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

FRANK GENE THOMPSON,
Defendant Below, Petitioner

Appeal from the Circuit Court of Boone County
The Honorable William S. Thompson, Judge
Civil Action No. 15-F-95

REVERSED AND REMANDED

Submitted: February 7, 2018
Filed: April 5, 2018

Dana F. Eddy, Esq.
Public Defender Services
Charleston, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Gordon L. Mowen, II, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

2.      "'"'The right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14 of the West Virginia Constitution." Syllabus point 4, [in part,] *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981).' Syllabus point 4, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994)." Syl. Pt. 2, *State v. Varner*, 212 W.Va. 532, 575 S.E.2d 142 (2002).

3.      "The trial judge in a criminal trial must consistently be aware that he occupies a unique position in the minds of the jurors and is capable, because of his position, of unduly influencing jurors in the discharge of their duty as triers of the facts. This Court has consistently required trial judges not to intimate an opinion on any fact in issue in any manner. In criminal cases, we have frequently held that conduct of the trial judge which indicates his opinion on any material matter will result in a guilty verdict

i

being set aside and a new trial awarded." Syl. Pt. 4, *State v. Wotring*, 167 W.Va. 104, 279 S.E.2d 182 (1981).

4.      "In the trial of a criminal offense, the presumption of innocence existing in favor of a defendant continues through every stage of the trial until a finding of guilty by the jury." Syl. Pt. 11, *State v. Pietranton*, 140 W.Va. 444, 84 S.E.2d 774 (1954).

5.      "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

WORKMAN, Chief Justice:

A jury found Petitioner Frank Thompson guilty of four felony counts of driving under the influence ("DUI") causing death, two felony counts of child neglect resulting in death, and three misdemeanors. On appeal, Petitioner asserts the trial court's comments deprived him of his constitutional right to a fair trial by an impartial jury. He also challenges the sufficiency of the evidence on the felony convictions.

After review, we find that the trial court's comments at the beginning of the jury selection process tainted Petitioner's presumption of innocence and deprived him of a fair trial. We therefore reverse Petitioner's convictions. Because the evidence of Petitioner's guilt was otherwise sufficient, we reverse and remand for a new trial.

## I. BACKGROUND

In the early morning hours of September 19, 2014, Petitioner was driving a vehicle on US 119 in Boone County, West Virginia. Four passengers were with Petitioner: his girlfriend, Betty Holstein, their one-year-old-son, Nathaniel Thompson, Ms. Holstein's five-year-old-daughter, Alyssa Bowman, and Ms. Holstein's friend, Rebecca Bias. Petitioner drove the vehicle off the side of the road and it crashed against an embankment about 600 feet away, landed on the passenger side, and caught fire. All of the passengers were killed.

1

Following an investigation, Petitioner—who tested positive for methamphetamine following the accident—was arrested and indicted on multiple charges. The case proceeded to trial in March 2016. The jury found Petitioner guilty of six felonies (four counts of DUI causing death and two counts of child neglect resulting in death) and three misdemeanors (reckless driving, driving on a suspended license, second offense, and failure to maintain lane of travel).

The State instituted recidivist proceedings.[1] Thereafter, the trial court sentenced Petitioner in July 2016.[2]

We detail the relevant facts more specifically below as they relate to Petitioner's two assignments of error.

---

[1] *See* W.Va. Code § 61-11-18(c) (2014) ("When it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life."). A jury found Petitioner had twice before been convicted of felony offenses (breaking and entering, and intent to distribute a controlled substance).

[2] Due to his recidivist status, Petitioner was sentenced to life with mercy for his conviction of DUI causing death, an indeterminate term of not less than two nor more than ten years' incarceration upon his conviction for the three additional counts of DUI causing death, and a period of not less than three nor more than fifteen years' incarceration on each of two counts of child neglect resulting in death. He was ordered to pay the minimum fines for his convictions of driving on a suspended license and reckless driving, and failure to maintain lane of travel. The trial court also ordered Petitioner to serve a period of fifty years of extended supervised release and register as a convicted child abuser.

## II. STANDARD OF REVIEW

The alleged errors raised by Petitioner are subject to particular standards of review, which we set forth in connection with our discussion of them. Generally, however,

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

## III.  DISCUSSION

### A. Trial Court's Comments Irreparably Tainted the Jury Pool

On the morning trial was scheduled to begin Petitioner indicated that he wished to plead guilty pursuant to a plea agreement offered by the State. As a result, the trial court released the jury pool for the day, telling them, in relevant part:

> Ladies and gentlemen of the jury, you all were called here today on the case of State of West Virginia vs. Frank Thompson. Case number 15-F-95. It was a case involving four counts of DUI causing death, two counts of child abuse causing death.
>
> About five minutes ago the defendant reached an agreement with the State and is going to enter a plea here later this morning.

3

I want to say that even though you all didn't really do anything, you really did a lot. The fact that he knew there was 56 people out here waiting to make a decision on his guilt or innocence I'm sure weighed heavily on his mind and ultimately caused him to decide to accept the plea agreement that the State had offered.

I can't really tell you much more about the case but he probably did everyone a favor by doing the plea. It was a pretty tragic case.

. . . .

I thank you for your service. Don't think you didn't do anything. There was not a plea agreement this morning at 9:00 a.m. The fact that he knew that there was 56 people out here waiting to decide his fate I think is what caused him to change his mind and decide to accept the agreement.

Like I said, I think he did—I think he did the jury pool a favor, because like I said it was a pretty tragic case with some children involved.

Good luck. Thank you all very much.

Thereafter, the parties informed the trial court that Petitioner had decided to withdraw his guilty plea and go to trial. The trial court then placed the following on the record: "I did release the jury, I gave them the name of the defendant and told them what the charges were. I did not say anything else. I don't know if I did anything to prejudice the jury, but I would have said that anyway at the start of trial."

The following day, the trial court convened the same jury pool. Petitioner moved for a mistrial and stated the trial court's comments irreparably tainted that panel.

4

The trial court denied the motion. Instead, in hopes of minimizing the obvious problem, the trial court informed the jury pool what occurred and gave a curative instruction:

> The matter was set for trial yesterday, and the jury panel was summonsed to be here. At the start of the trial the parties announced to the Court they had reached a plea agreement. Pursuant to this announcement, the Court released the jury panel. The plea agreement ultimately did not take place, which brings us back here today.

> The fact that there were plea negotiations, a tentative plea agreement that did not take place, and anything this Court might have stated upon releasing the jury shall not be considered at any time by this jury panel, nor jury as evidence, and shall not be viewed in reaching any decisions on this matter.

The parties agree that none of the jurors eventually seated gave any indication that he or she was biased or prejudiced against Petitioner. Nevertheless, Petitioner asserts the trial court's comments to the jury pool irrevocably tainted the group and constituted a denial of his constitutional rights to fair trial by an impartial jury when the petit jury was selected from the biased jury pool. We agree.

A criminal defendant's right to be tried by an impartial judge and jury is sacrosanct, regardless of the evidence against him or her. *See Tumey v. Ohio*, 273 U.S. 510, 535 (1927). So basic to our jurisprudence is the right to a fair trial that it has been

5

called "the most fundamental of all freedoms." *Estes v. Texas*, 381 U.S. 532, 540 (1965).[3]

"A fair trial in a fair tribunal is a basic requirement of due process. . . . This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies." *Turner v. Louisiana,* 379 U.S. 466, 472 (1965) (quotation marks and citations omitted).

As this Court held in syllabus point two of *State v. Varner*, 212 W.Va. 532, 575 S.E.2d 142 (2002),

> ""'[t]he right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14 of the West Virginia Constitution." Syllabus point 4, [in part,] *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981).' Syllabus point 4, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994)."

"And the question of whether a jury is impartial is dependent upon whether the jurors are free from bias or prejudice either for or against the accused." *State v. McClure*, 184 W.Va. 418, 421, 400 S.E.2d 853, 856 (1990) (citing *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978), and *State v. Hatfield*, 48 W.Va. 561, 37 S.E. 626 (1900)).

Consistent with this bedrock rule of law, trial courts must jealously guard the fairness and integrity of the entire criminal trial process. This Court has cautioned that

---

[3] "It is a right essential to the preservation and enjoyment of all other rights, providing a necessary means of safeguarding personal liberties against government oppression." *Neb. Ass'n v. Stuart*, 427 U.S. 539, 586 (1976).

> [t]he trial judge in a criminal trial must consistently be aware that he occupies a unique position in the minds of the jurors and is capable, because of his position, of unduly influencing jurors in the discharge of their duty as triers of the facts. This Court has consistently required trial judges not to intimate an opinion on any fact in issue in any manner. In criminal cases, we have frequently held that conduct of the trial judge which indicates his opinion on any material matter will result in a guilty verdict being set aside and a new trial awarded.

Syl. Pt. 4, *State v. Wotring*, 167 W.Va. 104, 279 S.E.2d 182 (1981).[4]

In this case, the trial court informed the jury pool that Petitioner decided to plead guilty and that he "probably did everyone a favor by doing the plea. It was a pretty tragic case." It repeated this sentiment moments later when it stated: "I think he did the jury pool a favor, because like I said it was a pretty tragic case with some children involved." Consequently, it is beyond serious debate that the trial court expressed its opinion on *a* material matter at trial. Essentially, the trial court made clear its opinion on *the* material fact at trial—Petitioner's guilt. The statements suggested that in view of the guilty plea, the trial court believed that Petitioner committed the crimes charged and the

---

[4] *See, e.g., State v. Keaton*, 215 W.Va. 376, 382, 599 S.E.2d 799, 805 (2004) (reversing conviction because trial court's remarks amounted to it telling jury that because defendant was "'pressing' his constitutional right to a twelve-person jury," they would be inconvenienced); *see also United States v. Bray*, 546 F.2d 851, 859 (10th Cir. 1976) (holding trial court committed plain error by setting defendant's bail within jury's presence and "admonishing the marshals to 'lock him up' if bail was not met, [because] the court effectively vitiated the presumption of innocence."); *State v. Sidbury*, 306 S.E.2d 844, 845 (N.C.Ct.App. 1983) (declaring trial judges must be careful in what they say and do because jury looks to court for guidance and picks up slightest intimation of opinion).

plea agreement avoided an unnecessary trial. Obviously, when the trial court made these remarks it had no idea that Petitioner would ultimately reject the plea offer and its remarks to the jury in this circumstance were not improper.

Petitioner relies on *Blue v. State*, 41 S.W.3d 129 (Tex.Crim.App. 2000), a case with disturbingly similar facts. In *Blue*, a trial judge disclosed to the venire that, to the judge's chagrin, the defendant turned down a plea bargain. *Id*. at 130. The trial proceeded and the defendant was convicted. On appeal, the court reversed and properly reasoned that a juror who knows at the outset that the defendant "seriously considered entering into a plea agreement no longer begins with a presumption that the defendant is innocent." *Id*. at 132. Further,

> a juror who hears the judge say that he would have preferred that the defendant plead guilty might assume that the judge knows something about the guilt of the defendant that the juror does not. Surely, no trial judge would want an innocent man to plead guilty, no matter how much delay and expense he might be causing.

*Id*. Accordingly, the court concluded that the comments of the trial judge, which imparted information to the venire that vitiated the defendant's presumption of innocence, were a fundamental error of constitutional dimension and required reversal of his conviction. *Id*.

The same cogent reasoning applies in the instant case. The trial court's comments here effectively removed the presumption of innocence prior to Petitioner's trial. We note that at the time the trial court made these comments, it was simply thanking

8

members of the jury pool for their time and explaining why they were being released for the day. In this context, the remarks were completely appropriate. However, once Petitioner decided to reject the plea deal and proceed to trial, this jury pool was irrevocably tainted with the knowledge that Petitioner was willing to plead guilty in a case involving multiple casualties.

We therefore reject the State's position that the perfunctory curative instruction cured the taint. To accept the State's argument, we would essentially turn a critical constitutional right to a fair trial with an impartial jury into nothing but a hollow formality. Moreover, the opportunity to explore juror bias during voir dire was not sufficient to overcome the insurmountable obstacle that members of the jury pool knew Petitioner's guilty plea had not materialized.[5] For a court to rule that a prospective juror was qualified to serve simply because he claimed he could be fair ignores the common-sense reality of this situation. *See generally State v. Jonas*, 904 N.W.2d 566, 571 (Iowa 2017) (recognizing "once the genie of prejudice or bias is out of the bottle, it is a fool's errand to put it back in through persistent coaxing."). And courts have cautioned that judicial rehabilitation should not become a "stark little exercise." *State v. Saunders*, 992 P.2d 951, 962 (Utah 1999). We are cognizant that "[o]ne of the myths" of jury selection is that an answer to a "magic question" posed by the court results in juror rehabilitation

_____

[5] We note that this evidence would be inadmissible at trial. Rule 410 of the West Virginia Rules of Evidence provides, in relevant part, that: "In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions: (1) a guilty plea that was later withdrawn[.]"

9

sufficient to eliminate bias. *Montgomery v. Commonwealth*, 819 S.W.2d 713, 717 (Ky. 1991). [6]

In so holding, we in no way denigrate the importance of voir dire. Properly employed, it serves the essential purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges. As the United States Supreme Court stressed in *Dennis v. United States*, 339 U.S. 162, 168 (1950): "[T]he trial court has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor." But, it is nevertheless clear based on the facts before us that the trial court abused its discretion in this case considering its immediate recognition of the likelihood of a tainted prospective juror pool.

The presumption of innocence is an elementary tenet of our criminal justice system and enforcement of this principle—its application to each and every criminal defendant—"lies at the foundation of the administration of our criminal law." *Coffin v.*

---

[6] United States District Court Judge Mark W. Bennett has observed: "As a [federal] district court judge for over fifteen years, I cannot help but notice that jurors are all too likely to give me the answers that they think I want, and they almost uniformly answer that they can 'be fair.'" Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 160 (2010).

*U.S.*, 156 U.S. 432, 453 (1895).[7] The Supreme Court of the United States has observed that the "presumption of innocence, although not articulated in the [United States] Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976).

This Court has emphasized that "under our law the presumption of innocence is an integral part of criminal due process and . . . such presumption is itself a constitutional guarantee embodied in Article III, Section 10 of the West Virginia Constitution." *State v. Boyd*, 160 W.Va. 234, 240, 233 S.E.2d 710, 716 (1977); *see Pinkerton v. Farr*, 159 W.Va. 223, 229, 220 S.E.2d 682, 687 (1975) ("The right to a presumption of innocence is so firmly embedded in our law, . . . that a violation of that right would result in such unfairness as to constitute a deprivation of one's right to due process of law."). We have also made clear that "[i]n the trial of a criminal offense, the presumption of innocence existing in favor of a defendant continues through every stage of the trial until a finding of guilty by the jury." Syl. Pt. 11, *State v. Pietranton*, 140 W.Va. 444, 84 S.E.2d 774 (1954); *accord Pullin v. State*, 216 W.Va. 231, 235, 605 S.E.2d 803, 807 (2004).

---

[7] "The *Coffin* Court traced the venerable history of the presumption from Deuteronomy through Roman law, English common law, and the common law of the United States." *Taylor v. Kentucky*, 436 U.S. 478, 483 (1978).

11

Consistent with this precedent, we find that the trial court's comments resulted in a violation of Petitioner's right to a fair trial by an impartial jury. Consequently, the State cannot establish that the error was rendered harmless beyond a reasonable doubt by the curative instruction or voir dire.[8] For this reason, Petitioner's convictions must be reversed.

Although we have granted Petitioner relief on his first assignment of error, we also address his sufficiency-of-the-evidence claim in order to resolve the issue of whether the State may retry him. The general rule is that the State may retry a defendant when reversal of the criminal conviction results from trial error rather than evidentiary insufficiency.[9]

---

[8] *See* Syl. Pt. 5, *Boyd*, 160 W.Va. at 234, 233 S.E.2d at 713 ("'Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt.' Syllabus point 5, *State ex rel. Grob v. Blair*, [158] W.Va. [647], 214 S.E.2d 330 (1975).").

[9] *Nancy v. State*, 553 S.E.2d 794, 795 (Ga. 2001); *see also Greene v. Massey*, 437 U.S. 19 (1978) (holding Double Jeopardy Clause prevents State from retrying defendant after conviction has been reversed by appellate court on ground that evidence introduced at prior trial was insufficient, as matter of law, to sustain jury's verdict); Syl. Pt. 4, *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979) ("The Double Jeopardy Clause of the Federal and this State's Constitutions forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.").

B. Evidence was Sufficient to Support Convictions

Petitioner also contends there was insufficient evidence to sustain his convictions for the felony offenses of DUI causing death and child neglect resulting in death. Petitioner concedes that he consumed methamphetamine prior to the accident. However, with regard to the DUI causing death convictions, he maintains the State failed to prove beyond a reasonable doubt that such consumption caused him to be under the influence of methamphetamine and that such influence was a contributing cause to the deaths. Likewise, with regard to the child neglect causing death convictions in the DUI context, he maintains the State failed to prove beyond a reasonable doubt that he neglected Nathaniel and Alyssa by driving them while under the influence of methamphetamine and that such neglect caused their deaths. Petitioner reasons that drug use does not necessarily equate to impairment.

When considering sufficiency-of-evidence claims, this Court's review is highly deferential to the jury's verdict. In syllabus point three of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), this Court held:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict

13

should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*Accord* Syl. Pt. 13, *State v. Blevins*, 231 W.Va. 135, 744 S.E.2d 245 (2013).

Based upon our review, the evidence offered against Petitioner—when viewed in the light most favorable to the State, and when all inferences and credibility determinations are also viewed in the light most favorable to the State—was sufficient to sustain his respective convictions in this case beyond a reasonable doubt. Consequently, although there was extensive evidence supporting the convictions, the determination that the jury may have been biased by the trial court's comments requires the remand for a new trial.

## IV.  CONCLUSION

We hold that the trial court's comments at the beginning of the jury selection process tainted Petitioner's presumption of innocence and constituted reversible error. Because the evidence at trial was sufficient to sustain the verdicts, we reverse the convictions and remand for a new trial.

Reversed and remanded.

14