# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

October 17, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 13-1206** (Fayette County 13-F-69)

**David W. Pitts,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner David W. Pitts, by counsel Jason D. Parmer, appeals the "Sentencing and Commitment Order" entered by Circuit Court of Fayette County on October 13, 2013, following petitioner's conviction of delivery of cocaine. Respondent State of West Virginia, by counsel Christopher S. Dodrill, filed a response. Petitioner filed a reply. Petitioner's appeal centers on a mid-trial, ex parte, recorded, conversation between the judge and a juror, during which the juror informed the judge that her former boyfriend had mentioned the name of one of the witnesses and possibly the petitioner while they were dating.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Facts

Following a jury trial in August of 2013, petitioner was found guilty of one count of delivery of cocaine, a Schedule II narcotic controlled substance. The circuit court sentenced petitioner to an indeterminate term of two to thirty years in prison pursuant to West Virginia Code § 60A-4-408. As part of its case against petitioner, the State relied on a twenty-five-minute-long audiovisual recording that showed petitioner delivering cocaine to an informant, Michael Mayfield, in exchange for one hundred dollars.

Petitioner's appeal to this Court centers on a conversation that occurred between one of the jurors, Meredith Thomas, and the trial judge after the jury viewed the above-mentioned video during the morning of the trial. At some point in the video, informant Mayfield referred to a person as "Black Dave."[1] When the trial broke for lunch, Juror Thomas asked to speak privately

---

[1] Petitioner's brief to this Court states that petitioner is African-American.

1

with the judge, but did not specify the reason. The judge informed the parties of Juror Thomas's request and the following exchange occurred:

THE COURT: Well, I don't know what's going on, but Juror Thomas, as she was exiting the jury box just now, stopped and inquired of the Court if she could talk to me in private about this case. I don't know what that means.

[To defense counsel] Mr. Adkins, she wants to talk to me about - certainly, whatever she tells me, I'll come back in and report it to the court. Or if you tell me not to talk to her, I'll tell her to go on her way.

MR. ADKINS: It comes up from time to time. I think - if she's got something burning, I think everybody needs to hear it. We had this happen: I did not recognize that person during my jury selection, and it turns out the Defendant's sister and mother are acquaintances of mine, so -

THE COURT: Well-

MR. PARSONS [prosecuting attorney]: Your Honor, I think that you have to talk to her. If nothing else, if there's some sort of mortal threat here, at least we can get half of our day back. But I think, to protect you and the process here, it might be advisable to have the court reporter document what's discussed. That's just my thought.

THE COURT: All right. Well, I'll speak with her and when we reconvene at 1:15, I'll advise - well, I don't know what she's going to say. Let's go in the library. Bring Ms. Thomas in. Just everybody remain seated. We'll be right back.

The judge then met with Juror Thomas in his library with the court reporter present. The following is the entirety of their conversation:

THE COURT: Identify your name for the record.

JUROR THOMAS: Meredith Thomas.

THE COURT: All right. And you indicated as you were going out of the jury box that you wanted to speak to me in private. So I'm speaking with you without the lawyers and everybody else present. Ma'am, what is it that you wanted to inform me of?

JUROR THOMAS: Well, I didn't realize it until we were watching the video that I dated a guy a couple years ago that worked with both Mike Mayfield and Dave, the Defendant.

THE COURT: Okay.

JUROR THOMAS: And I didn't realize - because he referred to him as Black Dave.

THE COURT: Okay.

JUROR THOMAS: And I didn't realize it until, you know, we were watching the video and I heard that name, and I was like - I wanted to let you know instead of just k [sic] to myself.

THE COURT: I appreciate it. You did exactly the right thing. So as you were watching the video, you realized that you used to date a person that is acquainted with Mayfield and the Defendant?

JUROR THOMAS: Yeah. His name's Cody King.

THE COURT: All right. And did that person tell you anything about this case or anything like that?

JUROR THOMAS: Not about this case, no.

THE COURT: Okay. All right. The fact that you now, I guess -I guess - I guess when he was referred to as "Black Dave" that triggered in your mind that -

JUROR THOMAS: Yeah.

THE COURT: -that you -

JUROR THOMAS: I never met him, but he - Cody had referred to him several times.

THE COURT: Okay. As Black Dave?

JUROR THOMAS: Yeah.

THE COURT: Okay. All right. I think I'll discuss this with counsel. I don't see anything in the fact that - maybe we ought to ask about nicknames of defendants before, but you did exactly the right thing. If there's any question at all about what you should divulge or not, you always ought to err on the side of caution.

JUROR THOMAS: Thank you, sir.

The judge then returned to the courtroom and advised the parties of the content of his conversation with Juror Thomas. The following exchange occurred:

3

THE COURT: All right. We're back on the record now. The Court has conferred with the juror, Meredith Thomas, and she wanted to divulge to the Court that during the during the [sic] playing of the video, she heard -- she heard a person referred to as "Black Dave."

That triggered in her mind a recollection that a. Fellow [sic] that she formerly dated, or had dated in the past evidently worked at the same place that Mayfield and the defendant worked at and had heard her boyfriend, or acquaintance, refer to a co-worker as "Black Dave." So when she heard that, that triggered in her mind a recollection that she was somewhat acquainted with these folks.

I inquired of her if this boyfriend had ever mentioned anything about this case or anything that in any way bias or prejudice [sic] her in this matter, and she indicated no. She just felt like she needed to bring that to the Court's attention, that she had heard the nickname of the Defendant, "Black Dave," if that's what his nickname is, or alias or whatever; that she was acquainted with that phrase, and I told her that she did exactly the right thing. What does the State say?

MR. PARSONS: If she has satisfied you that that potentially familiar -- if that doesn't prejudice her for or against the State or for or against the defendant, I see no reason to call her qualification into question, Judge. It seems that we should just plow forward.

THE COURT: Mr. Adkins?

MR. ADKINS: Did she, in your discussion with her, discuss what her boyfriend's name was? It may have been Mr. --

THE COURT: I believe she did. Some fellow named King, I believe. As I say, she indicated he used to work with or was acquainted with these folks. I think she indicated that he used work around them or work with them, had some connection with them. But like I say, she wasn't familiar with the Mayfield name or the defendant's name. But when she heard that name "Black Dave," that evidently struck a chord with her and she felt like she had a burning desire to make the Court aware of. And all of this was reported by the court reporter.

Petitioner's counsel requested and was permitted to question Juror Thomas further with respect to the issues she raised with the judge. Petitioner's counsel inquired of Juror Thomas about the identity of her boyfriend from whom she heard the workplace stories about petitioner and Mayfield. He also asked if she knew petitioner, and she stated that she did not. Petitioner's counsel did not expressly ask Juror Thomas whether she could continue to be fair and impartial, stating on appeal to this Court, that the judge's assurances that he asked those questions were

4

sufficient.[2] Nevertheless, following the additional inquiry of Juror Thomas, petitioner moved for a mistrial, and the court denied the motion.

Petitioner moved to set aside the verdict and for a new trial alleging several grounds, including that Juror Thomas was biased. The circuit court denied petitioner's motion, rejected his request for probation, and sentenced petitioner to two to thirty years in prison. This appeal followed.

**Discussion**

Petitioner raises three assignments of error on appeal. First, he argues that the judge's conversation with Juror Thomas constituted supplemental *voir dire* and violated his right to be present for all critical stages of the trial. "A critical stage in the criminal proceeding is one where the defendant's right to a fair trial will be affected." *State v. Boyd,* 160 W.Va. 234, 246, 233 S.E.2d 710, 719 (1977). *Voir dire* is a critical stage of a trial because it is the "primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice[.]" *State v. Miller,* 197 W.Va. 588, 601, 476 S.E.2d 535, 548 (1996). Petitioner contends that once the judge asked Juror Thomas about her knowledge of the witnesses, his conversation with her became *voir dire* as it had the potential to prejudice the defendant.[3]

Upon our review of the record, we disagree with petitioner that the judge's conversation with Juror Thomas constituted a critical stage of the trial. At the time Juror Thomas approached the bench, all the judge knew was that she wanted to speak with him privately; he did not know why. The judge advised both parties of her request to meet with him privately and neither party objected. Once the conversation concluded, the judge advised the parties of the content of the conversation and permitted defense counsel to inquire further. Based on our review of the transcript of the conversation, we do not believe that the judge's conversation with Juror Thomas was *voir dire* in the traditional pre-trial sense that is the basis of the authority cited in petitioner's brief.

Moreover, even if we were to conclude that the meeting with Juror Thomas was a critical stage in the proceeding, any error resulting from petitioner's absence was harmless beyond a reasonable doubt. The United States Supreme Court has held that the defense has no constitutional right to be present at every interaction between a judge and juror, nor is there a

---

[2] During the initial pre-trial *voir dire*, prospective jurors were asked a series of standard questions related to whether they had (1) any prejudice or bias against any party, (2) any preconceived opinions about the case, and (3) any reason that would prevent a fair and impartial verdict. No prospective juror answered any of these questions in the affirmative.

[3] Petitioner also contends that he did not knowingly waive his right to be present during the judge's questioning of Juror Thomas. The State notes that petitioner failed to object to the judge questioning Thomas ex parte, but agrees with petitioner that he did not knowingly waive the right to be present. Rather, the State argues that the judge's meeting with Thomas was not a "critical stage" in the proceeding.

right to have the conversation recorded. *See Rushen v. Spain,* 464 U.S. 114 (1983). Here, the conversation was recorded, and if petitioner had concerns about Juror Thomas's impartiality, he had the opportunity to inquire further.

We address petitioner's remaining two assignments of error in reverse order. In his third assignment of error, petitioner argues that he was denied a fair trial because the judge falsely stated that he had ensured Juror Thomas's continued impartiality. Petitioner contends that the judge misrepresented the content of their conversation, and therefore, "threatened the integrity of the judicial process," warranting a new trial. *See* Syl. Pt. 4, *State v. Clark,* 232 W.Va. 480, 752 S.E.2d 907 (2013) ("It is the inherent authority of the Supreme Court of Appeals to protect the integrity of the Court and the judicial process, and to regulate the type of evidence that is admitted into judicial proceedings when the integrity of the criminal justice system is threatened by the improper or unlawful acts of the State.")

Contrary to petitioner's argument, we do not believe that the judge's representation of his conversation with Juror Thomas warrants a new trial. The judge summarized the conversation and relayed that he asked Juror Thomas if her boyfriend ever mentioned this case, and she indicated that he had not. "In determining whether a juror should be excused, our concern is whether the juror holds a particular belief or opinion that prevents or substantially impairs the performance of his or her duties as a juror in accordance with the instructions of the trial court and the jurors' oath." *State v. Miller,* 197 W.Va. 588, 605, 476 S.E.2d 535, 552 (1996). Even if the judge was mistaken about whether he expressly asked Juror Thomas whether her boyfriend's statements biased her, the conversation was recorded, and the transcript fails to demonstrate that she was biased or prejudiced against petitioner.

Petitioner's second assignment of error is that he was denied a fair trial by an impartial jury, likewise, as a result of the judge's misrepresentation of the conversation with Juror Thomas, which petitioner argues, prevented the parties from fully inquiring into her possible bias. The right to an impartial jury requires that "[p]rivate communications, possibly prejudicial, between jurors and third persons, witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Mattox v. United States,* 146 U.S. 140, 150 (1892). Petitioner asserts that, to this day, no one knows whether Juror Thomas was impartial. However, the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips,* 455 U.S. 209, 217 (1982). As we have stated above, the transcript of the conversation with Juror Thomas fails to reveal a bias on her part that warrants a new trial.

For the foregoing reasons, we affirm.

Affirmed.

6

**ISSUED:**  October 17, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II