# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

vs) **No. 15-0947** (Kanawha County 15-F-225)

**Edward James Perod,**
**Defendant Below, Petitioner**

**FILED**

**February 21, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Edward James Perod, by counsel Clinton W. Smith, appeals the Circuit Court of Kanawha County's July 7, 2015, and July 23, 2015, orders regarding sentencing and restitution following his conviction for first-degree arson. The State of West Virginia, by counsel Jonathan E. Porter, filed a response in support of the circuit court's orders. On appeal, petitioner argues that (1) the circuit court erred in admitting certain testimony; (2) an assistant prosecutor committed misconduct; (3) the circuit court erred in denying a motion to dismiss the indictment; (4) the circuit court erred in denying a motion for a mistrial and in failing to give a curative instruction regarding certain testimony; (5) the circuit court erred in making prejudicial statements in the jury's presence; and (6) restitution should not have been awarded as ordered.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2015, the grand jury returned an indictment charging petitioner with first-degree arson, unlawful restraint, domestic battery, and domestic assault. The charges stemmed from an incident in December of 2014 involving petitioner, his wife, and a fire in their home. One of the witnesses called before the grand jury was Lieutenant R.M. Lanham of the Charleston, West Virginia, Fire Department. During his testimony, Lt. Lanham informed the grand jury that he attempted to interview petitioner at a hospital on the day of the fire, but that petitioner declined to be interviewed. Lt. Lanham further testified that the fire was set in four separate locations in the basement of the home and that many combustible materials (including a propane tank, gasoline cans, ammunition, gunpowder, and other explosives) were also located in the basement. Lt. Lanham concluded in his testimony that if the fires had ignited the nearby combustible materials, it would have obliterated several homes and a church in the area and would have killed as many as twenty first responders. In response to a grand juror's question, Lt.

1

Lanham also testified that he and a police officer discussed their belief that petitioner intended to commit murder/suicide by lighting the fires.[1]

In June of 2015, a jury trial commenced. As an initial matter on the first day of trial, petitioner's counsel moved to dismiss the indictment based on Lt. Lanham's statements to the grand jury regarding petitioner's rights to counsel and to remain silent. The circuit court denied the motion.

At trial, the State presented several witnesses, including petitioner's wife, Lt. Lanham (who was qualified as an expert in the area of fire causation and origin), and the investigating officers. The State's witnesses presented the following account of December 8, 2014, which was not largely contested by petitioner: On the afternoon and evening of the night in question, petitioner was drinking beer. He and his wife had an argument, and he went to a bar to continue drinking. Thereafter, petitioner's wife met him at the bar. Petitioner and his wife then returned to their home, and they engaged in sexual conduct that involved petitioner handcuffing his wife, tying her legs together, placing a sock in her mouth, and cutting her clothes with a knife. At some time during their conduct, petitioner informed his wife that he intended to commit suicide. He then left her in a room alone, went to the basement of the home, and lit several "small burn piles[.]"[2]

Petitioner's wife managed to escape the home through a window. She immediately sought help from a neighbor, who called law enforcement. By the time law enforcement officers arrived, petitioner had cut his wrists and barricaded himself in the basement. Petitioner eventually exited the home. According to the State's witnesses, after petitioner emerged from the home, a first responder asked him where the fire was, and petitioner responded "[f]*** you, go in and find it." Petitioner denied making the statement. First responders ultimately extinguished the fires. Petitioner was taken to a hospital to treat his injuries, and he was subsequently arrested.

In response to the assistant prosecutor's questions, Lt. Lanham testified that extensive damage could have resulted from the fires spreading to the combustible materials in the basement. Petitioner objected to the testimony as speculative, and the circuit court overruled the objection. Lt. Lanham then testified that he sought to interview petitioner at the hospital prior to his arrest, but petitioner declined the interview. The trial transcript reveals the following exchange regarding Lt. Lanham's testimony about his interview with petitioner at the hospital:

---

[1]It should be noted that the assistant prosecutor conducting the State's questioning of Lt. Lanham before the grand jury did not elicit any of the statements at issue on appeal. Further, immediately after Lt. Lanham's statements regarding petitioner's request for counsel and decision not to be interviewed, the assistant prosecutor informed the grand jury that petitioner was merely acting within his constitutional rights.

[2]According to the State, petitioner's wife remained handcuffed when petitioner left her in the room alone.

[Assistant prosecutor] Q: You're aware that the suspect in this matter, the defendant, left the residence with lacerations to his wrists, right?

[Lt. Lanham] A: I did not know that whenever I took these pictures [referring to photographs later moved into evidence]I was made aware of that when the police department advised me that they had taken him to Charleston General [hospital] for injuries. That's where we went to ask him some questions.

Mr. Smith [petitioner's counsel]: I object, Your Honor. . . .

Petitioner's counsel objected to Lt. Lanham's testimony and moved for a mistrial on the basis that petitioner's invocation of his rights to counsel and to remain silent should not have been placed before the jury. The circuit court did not sustain the objection, and it denied the motion for a mistrial. Lt. Lanham further testified that the home had an approximate value of $55,000 and the fire damage totaled approximately $10,000. At the close of the State's case-in-chief, petitioner's counsel moved to dismiss the unlawful restraint charge. The circuit court granted that motion.

In his testimony, petitioner admitted that he was intoxicated and lit the fires in the basement of the home. He denied that he in anyway intended to commit violence or to assault his wife. During the State's cross-examination of petitioner, while the assistant prosecuting attorney was asking petitioner questions about his suicide attempt, petitioner's counsel interjected an offer to stipulate to the attempted suicide. In response to the interjection, the circuit court judge stated "[t]his is cross-examination. Please don't interrupt." Following its deliberations, the jury returned a verdict finding petitioner guilty of the charge of first-degree arson and not guilty on the charges of domestic battery and domestic assault.

In July of 2015, the circuit court held a hearing on post-trial motions and sentencing. Having heard the parties' arguments, the circuit court denied petitioner's motion for a new trial. As to sentencing, petitioner's counsel objected to the presentence investigation report ("PSI") in that it referred to potential restitution in the amount of approximately $34,000. The PSI provided that an insurance company paid that amount in a claim for damages to the home as the result of petitioner setting the fires. Petitioner's counsel admitted that petitioner was in the process of buying the home, and he stated that he could not factually dispute that the insurance company paid the bank as a lienholder. However, petitioner's counsel argued that a payment of approximately $34,000 for fire damage to the home was significantly more than the damages would actually cost to repair. Petitioner's counsel argued that the State's own witness, Lt. Lanham, estimated that the home was worth approximately $55,000 and that the fire damage totaled approximately $10,000. He then requested that the circuit court disregard the insurance payment referenced in the PSI. The circuit court denied the request. Noting petitioner's objections, the circuit court admitted the PSI into evidence. Following arguments of counsel and an allocution by petitioner, the circuit court sentenced him to a determinate term of fifteen years with credit for time served in the amount of 211 days. As to the amount of restitution, the circuit court held its ruling in abeyance and scheduled a hearing on the issue.

In late July of 2015, the circuit court held a hearing on the issue of restitution. At the hearing, an insurance adjuster for Farmers Mutual Insurance Company ("Farmers") testified that he had investigated the arson on petitioner's home. He testified that under the policy on the home, J.P. Morgan Chase ("bank") was listed as a mortgagee. He explained that because the bank, petitioner's wife, and her daughter appeared to be innocent insureds, Farmers paid the claim for fire damage to those insureds, regardless of petitioner's intentional act. The insurance adjuster testified that the total claim paid, less a five-hundred dollar deductible, totaled $37,234.17. At the conclusion of the hearing, the circuit court ordered petitioner to pay restitution to the insurance company in the amount of $37,234.17. This appeal followed.

We have previously held as follows:

> "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 1, *State v. Blevins*, 231 W.Va. 135, 744 S.E.2d 245 (2013). We have further held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). Additional standards of review will be discussed where necessary below to address petitioner's six assignments of error.

Petitioner first argues that the circuit court erred in admitting Lt. Lanham's testimony regarding the potential spread of the fires to combustible materials in the basement. Petitioner claims that Lt. Lanham's testimony was speculative, unfairly prejudicial, and violated Rule 403 of the West Virginia Rules of Evidence. Rule 403 provides as follows: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." With regard to a circuit court's consideration of Rule 403, we have held that

> [Following a determination of relevance,] [t]he trial court then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence. As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse.

Syl. Pt. 10, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

In its response, the State argues that Lt. Lanham's testimony was necessary to establish the elements of first-degree arson. West Virginia Code § 61-3-1 provides that a person commits

first-degree arson when he/she "willfully and maliciously" sets fire to a dwelling or outbuilding. According to the State, petitioner's actions (including setting the fires in the basement near combustible materials) established his willful and malicious intent in setting the fires.

Upon our review of the record herein, we do not agree with petitioner that Lt. Lanham's testimony was unfairly prejudicial. "The fact that evidence is prejudicial is not grounds by itself for exclusion. It is safe to say that almost all evidence introduced by the State in a criminal trial is prejudicial in one degree or another; indeed, that is usually why it is introduced." *State v. Peacher*, 167 W.Va. 540, 574-75, 280 S.E.2d 559, 581 (1981). Lt. Lanham, who was qualified as an expert in the area of fire origin and causation, provided the jury with the circumstances, conditions, and consequences of the fires set by petitioner. Lt. Lanham's testimony necessarily had, as the State suggests, a probative value related to the jury's understanding of the fires at issue and petitioner's malicious intent in setting the fires. We have explained that expert testimony "is not objectionable for the reason that it relates to whether a given effect *might* result from a certain cause. Such testimony is not speculative 'but is a common and proper mode of examination.' *Foose v. Hawley Corp.*, 120 W.Va. 334, 198 S.E. 138, 139." *State v. Evans*, 136 W.Va. 1, 5-6, 66 S.E.2d 545, 548 (1951). Based on the limited circumstances of this case, we find that the record on appeal does not support petitioner's contention that the prejudicial dangers of Lt. Lanham's testimony substantially outweighed its probative value.

Further, petitioner argues that Lt. Lanham's "speculative testimony was irrelevant to any issue before the jury[.]"[3] Contrary to petitioner's claim, Lt. Lanham's testimony was clearly relevant to the jury's understanding of circumstances of the fire at issue and to the elements of first-degree arson. Having reviewed the record on appeal, the parties' arguments, and pertinent legal authority, we find that the circumstances under which petitioner set the fires, including his intended purpose in setting them, were relevant to State's prosecution. For those reasons, we find no merit in petitioner's first assignment of error.

Next, petitioner contends that the State committed prosecutorial misconduct when it asked Lt. Lanham about the consequences of the fires in the home. We note that petitioner fails to indicate when and how he placed this issue of prosecutorial misconduct before the circuit court. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires a brief submitted to this Court to "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."

Moreover, the rule in West Virginia is that "[i]f either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made

---

[3]In his first assignment of error, petitioner relies solely on Rule 403, which expressly presumes that the evidence under review has been determined to be relevant. Inexplicably, petitioner also asserts in his first assignment of error (albeit in a few short sentences) that Lt. Lanham's testimony was irrelevant. Petitioner does not explain the contradiction in these arguments. In this memorandum decision, we address petitioner's arguments on Rule 403 and irrelevance as if they were presented in the alternative.

coupled with a request to the court to instruct the jury to disregard the remarks." Syl. Pt. 5, in part, *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987). Generally, "[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." Syl. Pt. 2, in part, *State v. Adkins*, 209 W.Va. 212, 544 S.E.2d 914 (2001). As petitioner did not properly preserve this issue by objecting below, we find that he has waived it for appellate review. As such, we decline to address petitioner's second assignment of error further.

Petitioner's third assignment of error is that the circuit court erred in denying his motion to dismiss the indictment. In support, petitioner claims that Lt. Lanham prejudiced the grand jury by testifying that petitioner requested counsel, declined to be interviewed, and may have intended to commit murder/suicide by setting the fires. The State responds that grand juries enjoy "almost plenary power" in considering evidence of potential criminal conduct and that dismissal of the indictment was, and is, improper under both the facts and the law of this case.

Regarding our review of a motion to dismiss an indictment, we have held as follows:

> This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's "clearly erroneous" standard of review is invoked concerning the circuit court's findings of fact.

Syl. Pt. 1, *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009). We have also established the following test for reviewing a ruling on the dismissal of an indictment:

> "Dismissal of [an] indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261-62, 108 S.Ct. 2369, 2377, 101 L.Ed.2d 228, 238 (1988) (citing *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986) (O'Conner, J., concurring)).

Syl. Pt. 6, *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989). Underscoring the need for grand jury violations to be "substantial" and "grave" to demand relief, this Court in *Pinson* noted that "[d]ismissal of an indictment based on improper testimony of a trivial or inconsequential nature would neither be in the interests of the efficient administration of justice, nor would it be dictated by the court's duty to protect the defendant's constitutional rights." *Id.* at 669, 383 S.E.2d at 851. Indeed, the general rule is that "a trial court should not grant a motion to dismiss criminal charges unless the dismissal is consonant with the public interest in the fair administration of justice." Syl. Pt. 12, in part, *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782, 786 (1984). When reviewing a challenge to a grand jury indictment, courts in this State must also consider that "[e]xcept for willful, intentional fraud[,] the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either

to determine its legality or its sufficiency." Syl., *Barker v. Fox*, 160 W.Va. 749, 238 S.E.2d 235, 235 (1977).

Under the circumstances of this case, we do not find that Lt. Lanham's testimony that law enforcement officers believed that petitioner may have intended to commit murder/suicide required the circuit court to grant the motion to dismiss the indictment. The allegations at the time of the grand jury proceedings were that petitioner handcuffed his wife, stated his intention to commit suicide, and left her in a room alone while he set several small fires in the home's basement and then cut his wrists. There was no evidence to establish that petitioner knew his wife had escaped the house before he set the fires. Moreover, it was also alleged that petitioner knew that his wife's teenage daughter was in the home on the night he set the fires.

Further, petitioner cites no authority for his contention that a grand jury is automatically biased upon learning from a witness that a person invoked his/her constitutional rights. While it is true that the State's attorney shall not make specific references to a defendant's failure to testify at trial, petitioner's contention arises in the context of a witness before the grand jury, not the State's attorney at trial. *See* Syl. Pt. 5, *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979) (holding that "[r]emarks made by the State's attorney in closing argument which make specific reference to the defendant's failure to testify, constitute reversible error and defendant is entitled to a new trial."). Nor does petitioner argue that the assistant prosecutor herein made any such references before the grand jury.

Under the circumstances of this case, we find no error in the circuit court's denial of petitioner's motion to dismiss the indictment. Lt. Lanham's statements do not rise to the level of "substantial influence" or raise concerns of "grave doubt" in the grand jury's indictment when taken in the context of the complete proceedings and when considered with the other evidence in the State's case against petitioner. This is particularly true where the assistant prosecutor presenting the State's case did not elicit nor repeat Lt. Lanham's statements and reinforced petitioner's right to invoke his constitutional safeguards. For those reasons, we find no error in the circuit court's denial of petitioner's motion to dismiss the indictment.

Next, petitioner argues that the circuit court erred in denying his motion for a mistrial arising from Lt. Lanham's testimony at trial about petitioner's request for counsel and his decision not to be interviewed.[4] We have explained that "[t]he decision to declare a mistrial,

---

[4]Petitioner argues that the circuit court, at a minimum, should have given the jury a curative instruction regarding Lt. Lanham's testimony. However, petitioner failed to request an instruction or to object on that ground. *See Mowery v. Hitt*, 155 W.Va. 103, 181 S.E.2d 334 (1971) (stating that "[i]n the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken."); *State v. Grimmer*, 162 W.Va. 588, 595, 251 S.E.2d 780, 785 (1979) (stating that "silence may operate as a waiver of objections to error and irregularities at the trial which, if seasonably made and presented, might have been regarded as prejudicial."); *Wimer v. Hinkle*, 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989) (explaining that the raise or waive rule is designed "to prevent a party from obtaining an unfair advantage by failing to give the trial

(continued . . . )

discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court." Syl. Pt. 8, *State v. Davis*, 182 W.Va. 482, 388 S.E.2d 508 (1989). Generally, circuit courts grant mistrials "only when there is a 'manifest necessity' for discharging the jury before it has rendered its verdict." *State v. Williams*, 172 W.Va. 295, 304, 305 S.E.2d 251, 260 (1983). "The determination of whether 'manifest necessity' that will justify ordering a mistrial . . . exists is a matter within the discretion of the trial court, to be exercised according to the particular circumstances of each case." Syl. Pt. 3, in part, *Porter v. Ferguson*, 174 W.Va. 253, 324 S.E.2d 397 (1984).

In support of his argument, petitioner relies heavily on *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977). In *Boyd*, this Court reversed a criminal conviction where the defendant's "constitutional right to remain silent . . . was infringed when he was required to answer why he did not divulge his self-defense story at the time he was in custody and after he had elected to remain silent." *Id.* at 239, 233 S.E.2d at 715. This Court explained in *Boyd* "that the constitutional right to remain silent carries with it the principle that a defendant cannot be impeached at trial by his pre-trial silence." *Id.* This Court further explained that there exists in our system of justice a "rule prohibiting the use of the defendant's silence against him" at trial. *Id.*

In this case, we find petitioner's reliance on *Boyd* to be misplaced. Unlike *Boyd*, petitioner was not impeached with his invocation of his right to remain silent. Indeed, petitioner does not contend that the State asked a single question about his request for counsel or decision to decline an interview after the fire. Petitioner does not contend that the State made any mention of those issues to the jury. Petitioner's contention is limited solely to Lt. Lanham's testimony. To underpin his argument, petitioner cites Lt. Lanham's testimony that petitioner was taken to the hospital after the fire and "[t]hat's where we [Lt. Lanham and other officers] went to ask him [petitioner] some questions." Petitioner's counsel objected immediately thereafter, which prevented any further testimony on the issue. Contrary to petitioner's assertion in this appeal, it is clear that Lt. Lanham made no mention of petitioner's invocation of his rights in this testimony. Petitioner's reaction to Lt. Lanham's attempt "to ask him some questions" was not presented to the jury. For those reasons, we find that the record on appeal does not support the factual assertions upon which this assignment of error rests. Petitioner's invocation of his rights to counsel and to remain silent was not commented upon or used against him at trial. As such, petitioner's fourth assignment of error has no merit.

In his fifth assignment of error, petitioner argues that the circuit court judge made prejudicial statements in the jury's presence. During the State's cross-examination of petitioner, the assistant prosecuting attorney was in the process of asking petitioner about his suicide attempt. After the assistant prosecutor began to ask a question but before petitioner answered, petitioner's counsel interjected an offer to stipulate to the suicide attempt. In response to petitioner's counsel's interjection, the circuit court judge stated, "[t]his is cross-examination.

---

court an opportunity to rule on the objection and thereby correct potential error."). Moreover, petitioner provides no authority requiring a curative instruction in like circumstances. As such, we decline to address this issue.

Please don't interrupt." Petitioner now claims that the circuit court judge's statements constitute prejudicial error requiring a new trial. We disagree.

In Syllabus Point 6 of *State v. Thompson*, 220 W .Va. 398, 647 S.E.2d 834 (2007), we held that

> "[a] trial judge in a criminal case has a right to control the orderly process of a trial and may intervene into the trial process for such purpose, so long as such intervention does not operate to prejudice the defendant's case. With regard to evidence bearing on any material issue, including the credibility of witnesses, the trial judge should not intimate any opinion, as these matters are within the exclusive province of the jury." Syllabus Point 4, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979).

We have also held that "the trial judge has discretion as to the extent of cross-examination." Syl. Pt. 4, in part, *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982).

In this appeal, petitioner does not argue that the circuit court was required to rule on, or even consider, his offer to stipulate to any given fact. Instead, petitioner claims only that the statements the circuit court made in the jury's presence prejudiced him and that those statements amounted to a personal opinion about petitioner. Following our thorough review of the issue, we find that the circuit court's statements were well within its scope of control over the orderly process of trial and also within its discretion regarding the State's cross-examination of a witness. In addition to their brevity, the statements provided no opinion, partial or otherwise, of the evidence, and the circuit court judge even used the courtesy "please" in his response. Consequently, we find no prejudicial error related to the circuit court judge's statements.

Finally, petitioner claims that the circuit court's restitution order is erroneous because (1) the amount of restitution is unsupported by the record, and (2) the circuit court made no finding regarding his ability to pay restitution. This Court "reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Lucas*, 201 W.Va. 271, 273, 496 S.E.2d 221, 223 (1997). With regard to restitution under similar circumstances to the case at bar, we have held as follows:

> 3. "Read *in pari materia*, the provisions of W.Va. Code [§] 61-11A-1 [1984], W.Va. Code [§] 61-11A-4(a) [1984], W.Va. Code [§] 61-11A-4(d) [1984], W.Va. Code [§] 61-11A-5(a) [1984] and W.Va. Code [§] 61-11A-5(d) [1984], establish that at the time of a convicted criminal defendant's sentencing, a circuit court should ordinarily order the defendant to make full restitution to any victims of the crime who have suffered injuries, as defined and permitted by the statute, unless the court determines that ordering such full restitution is impractical." Syl. Pt. 2, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997).

> 4. "Under W.Va. Code [§] 61-11A-1 through -8 and the principles established in our criminal sentencing jurisprudence, the circuit court's discretion

in addressing the issue of restitution to crime victims at the time of a criminal defendant's sentencing is to be guided by a presumption in favor of an award of full restitution to victims, unless the circuit court determines by a preponderance of the evidence that full restitution is impractical, after consideration of all of the pertinent circumstances, including the losses of any victims, the financial circumstances of the defendant and the defendant's family, the rehabilitative consequences to the defendant and any victims, and such other factors as the court may consider." Syl. Pt. 3, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997).

. . . .

6. Pursuant to West Virginia Code § 61-11A-4(e) (2014), a court may order a defendant to make restitution to an insurance company to the extent that the insurance company has compensated a victim for loss attributable to the defendant's criminal conduct.

Syl. Pts. 3, 4, and 6, *State v. Wasson*, 236 W.Va. 238, 778 S.E.2d 687 (2015).

In this case, as to the restitution amount, petitioner acknowledges that the insurance adjuster testified that Farmers paid $37,234.17 related to the fire set by petitioner that resulted in his conviction for first-degree arson. Although petitioner argues that the record does not support the restitution amount of $37.234.17 and that Lt. Lanham estimated the damage at approximately $10,000, the insurance adjuster's testimony clearly supports the circuit court's finding. The circuit court was in the best position to consider the testimony of Lt. Lanham as to an estimate of damages and the insurance adjuster's testimony as to its actual compensation paid when determining the amount of restitution. This Court "cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations[,] and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Contrary to petitioner's claim on appeal, we find that the amount of $37,234.17 is supported by the testimony of the insurance adjuster.

As to petitioner's claim that "there was no finding about his ability to pay" restitution, petitioner made no argument or objection at the restitution hearing regarding his ability to pay. Further, he presented no evidence to the circuit court during that hearing regarding his financial circumstances or assets. Given petitioner's failure to raise the issue of his ability to pay below, we need not address the issue on appeal. However, assuming, arguendo, that petitioner had properly preserved the issue, we have clearly held that "[w]hen restitution is ordered at a criminal defendant's sentencing pursuant to the provisions of W.Va. Code [§] 61-11A-4(a) [1984], the circuit court is not required to spread its findings and conclusions on the record in every case in which full restitution is ordered." Syl. Pt. 6, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997). We further note that the insurance adjuster testified that petitioner had an ownership interest, and presumably equity, in the home at issue, and there was no evidence to dispute that his home was an asset. Petitioner's counsel admitted below that petitioner had an ownership interest in the home. Based on the evidence in the record on appeal, we would find no error in this regard.

For the foregoing reasons, the circuit court's July 7, 2015, and July 23, 2015, orders are hereby affirmed.

Affirmed.

**ISSUED:** February 21, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker